# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 128 | **DATE** | 8/2/2004 |
| **CASE TITLE** | Gas Research Institute vs. Advanced Fuel Research, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: The Court denies defendant AFR's motion to dismiss or for transfer (docket #6-1, 6-2, 27-1 & 27-2). AFR is directed to anser the complaint on or before 8/13/04.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | 8/3/04 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 26 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 8/2/2004 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | | GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAS RESEARCH INSTITUTE,<br><br>Plaintiff,<br><br>vs.<br><br>ADVANCED FUEL RESEARCH, INC.;<br>ON-LINE TECHNOLOGIES, INC.;<br>and MKS INSTRUMENTS, INC.,<br><br>Defendants. | Case No. 04 C 128<br><br>AUG 5 2004 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Gas Research Institute, an Illinois not-for-profit corporation that provides research for the benefit of the natural gas industry, has sued three Connecticut-based entities, Advanced Fuel Research, Inc., On-Line Technologies, Inc., and MKS Instruments, Inc. GRI alleges that in 1995 it contracted with AFR and OLT, then an affiliate of AFR, to perform research on a low-cost emissions monitoring device. The contract, according to GRI, provided that all know-how that arose from the work would be GRI's property. AFR was granted a non-exclusive, royalty-free license for four moths after work was completed to make and sell any product or process for non-natural gas applications, and the contract included a commitment to negotiate a royalty-bearing license for the ensuing period. GRI alleges that AFR completed work in 2000 and thereafter sold products incorporating the know-how covered by the contract but refused to pay royalties or enter into an agreement to do so. According to GRI, AFR sold such products through OLT and later through MKS when MKS acquired OLT. GRI has sued the

3b

defendants for breach of contract, misappropriation of trade secrets, unjust enrichment, and conspiracy.

MKS and OLT answered the complaint and later filed a cross-claim against AFR and one of its officers alleging fraud, negligent misrepresentation, and breach of contract in connection with MKS's purchase of OLT, and for indemnity and contribution. AFR has moved to dismiss both the complaint and cross-claim for lack of personal jurisdiction or to transfer the claims against it to the District of Connecticut. For the reasons stated below, the Court denies both motions.

## Motion to dismiss

When personal jurisdiction is challenged, the plaintiff bears the burden of establishing *prima facie* that the Court properly may exercise jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelabo*, 338 F.3d 773, 782 (7th Cir. 2003). The parties are permitted to submit affidavits in connection with a motion to dismiss for lack of personal jurisdiction. Conflicts in the parties' affidavits and other evidence are resolved in favor of the exercise of jurisdiction. *Id.* at 782.

A federal court may exercise personal jurisdiction over an out-of-state defendant if the defendant is amenable to process in the forum state and the exercise of jurisdiction comports with due process. Illinois' long-arm statute confers an Illinois court with jurisdiction over a non-Illinois defendant to the extent permitted by the due process clauses of the federal and Illinois constitutions. 735 ILCS 5/2-209(c). The Seventh Circuit has indicated that there is no significant difference between the limits imposed on personal jurisdiction by the United States and Illinois constitutions, and thus the personal jurisdiction analysis collapses into a single

2

inquiry focused on federal due process requirements. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). Under the due process clause, before an out-of-state defendant may be required to defend a case in the forum state, it must have "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

There are two types of personal jurisdiction: general and specific. Only the latter is at issue in this case. A court may assert specific jurisdiction over an out-of-state defendant when the minimum contacts standard is met and the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. *E.g., Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984). The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to defend a suit there. *Burger King Corp. v. Rudziewicz*, 471 U.S. 462, 472, 474 (1985). This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research*, 338 F.3d at 780.

An important aspect of the analysis is whether the defendant deliberately engaged in significant activities in the forum state or "created continuing obligations between itself and a resident of the forum." *Id.* at 781. Territorial presence, though significant if it exists in a particular case, is not essential. "If, for example, a commercial defendant's efforts are directed

3

toward a particular jurisdiction, the fact that the actor did not actually enter the jurisdiction is not of critical importance." *Id.* (citing *Calder v. Jones,* 465 U.S. 782, 788-89 (1984)). "A substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King,* 471 U.S. at 476.

GRI submitted an affidavit by its senior technology manager Kevin Krist, and AFR submitted an affidavit from its chairman Peter Solomon, who at the time of the relevant events also held an unspecified position with OLT. These affidavits do not conflict in any material respect.

In January 1994, GRI issued a request for proposals, inviting interested parties to propose research into low-cost, high-sensitivity gas sensor technology. In March 1994, Solomon came to Illinois for a trade show for purchasers of scientific equipment on behalf of OLT, a seller of such equipment. At various times, Solomon was present in a hotel room where OLT was displaying an emissions sensor device called an FT-IR device. Krist came to the hotel room, and Solomon discussed the operation of the device with him.

In October 1994, AFR and OLT submitted a contract proposal to GRI in response to the request for proposals. The proposal concerned development of an FT-IR device. In January 1995, GRI sent a proposed contract, already signed, to AFR in Connecticut. AFR signed the contract and returned it to GRI. One can fairly infer that the parties understood or assumed that AFR would perform its work under the contract at its facilities in Connecticut. But the contract contemplated that AFR would work "under the general technical direction of GRI's Project Manager," Contract ¶ 5.1, that it would submit quarterly written reports to GRI, *id.* ¶¶ 6-1 - 6.5,

and that it would make three oral presentations to GRI personnel. *Id.* ¶ 6.6. The contract provided that it would be governed by Illinois law. *Id.* ¶ 21.1.

During the period of its work under the contract, AFR submitted a number of written progress reports to GRI in Illinois. In addition, Solomon met two or three times with GRI representatives in Illinois to report on AFR's progress, as the contract contemplated. Solomon says that two of these visits were timed to coincide with occasions when he was traveling through Chicago for other purposes. AFR also had extensive written (mail and e-mail) communications with GRI that it sent to Illinois. Payments were sent by GRI to AFR in Connecticut.

Though AFR performed all of its research work in Connecticut, when one considers the parties' entire transaction – including their negotiations for a contract, contemplated future consequences, the contract's terms, and their dealings under the contract – the Court would be hard-pressed to find that it was unforeseeable to AFR that it could be brought into an Illinois court regarding a dispute over its contract with GRI. AFR was one of a number of entities that received GRI's request for proposals. It did not ignore the request but instead reached out to an Illinois entity to propose a multi-year contractual relationship (that is what the request for proposals contemplated). Though there is no evidence that Solomon made his March 1994 trip to Chicago for the purpose of marketing his company or its product to GRI, it would be foolish to believe that the meeting he had with Krist in Chicago, at which OLT displayed a product similar to the one involved in its later contract proposal, had nothing to do with AFR later getting GRI's business. AFR's relationship with GRI was one that contemplated supervision by an Illinois-based project manager and regular reporting in Illinois, including oral presentations which took

5

place in this state. Under the circumstances, the evidence plainly establishes that AFR established minimum contacts with Illinois such that it reasonably could anticipate being haled into court here.

Once a court determines, as we have in this case, that the defendant purposefully established contacts with the forum state, "those contacts may be evaluated in light of other factors to determine ... whether the exercise of jurisdiction would be compatible with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320)). These factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient relief, the judicial system's interest in the most efficient resolution of the dispute, and the interests of the several states in furthering substantive social policies. *Purdue Research*, 338 F.3d at 781 (citing *Burger King*, 471 U.S. at 477). In the Court's view, these factors are roughly a wash in this case. In any event, "[t]hese factors rarely will justify a determination against personal jurisdiction. Usually ..., these considerations may be accommodated through the consideration of means other than jurisdiction," such as by the application of choice of law rules or a change of venue. *Id.* at 781 n.10. The Court does not believe that fundamental fairness requires favoring AFR's desire to litigate the case in its home forum over GRI's desire to do the same.

## Motion to transfer

A federal court may transfer an action to any other district where it might have been brought, for the convenience of the parties and witnesses and in the interests of justice. 28 U.S.C. § 1404(a). The party seeking transfer has the burden of establishing that the proposed transferee district is "clearly more convenient" than the district the plaintiff chose. *Coffey v. Van*

*Dorn Iron Works*, 796 F.2d 217, 219-20 (7thCir. 1986). Transfer should be denied if the result would be simply to shift the burden of inconvenience from one side of the case to the other. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

In evaluating the convenience of the parties and witnesses, the court considers the plaintiff's choice of a forum, the relative ease of access to evidence, the convenience of the witnesses, and the convenience of the parties in litigating in the respective forums. *See, e.g., Millennium Products, Inc. v. Gravity Boarding Co.*, 127 F. Supp. 2d 974, 980 (N.D. Ill. 2000). The plaintiff's choice of a forum is entitled to substantial weight, particularly if, as in this case, some of the events significant to the litigation took place in the forum state. *Id.*

The relevant events took place at both sides' offices, and each party's documents are obviously kept at its own offices, so those factors are a wash. AFR's primary argument in favor of transfer is that there are a significant number of witnesses based in Connecticut. But it has provided no affidavits regarding who is likely to testify and why. Rather, it has provided only its Rule 26(a)(1) disclosure, in which it was required to identify persons with knowledge of relevant facts. The list consists primarily of current and former employees of itself and OLT who performed work on the contract. But AFR has provided little information about the subjects of these persons' testimony, and thus the Court is unable to evaluate how many of them are actually likely to testify. Without explanation of the witnesses' likely role in the litigation, the Court is unwilling to assume they will testify. In short, AFR has failed to persuade the Court that its proposed forum is clearly more convenient than the one that GRI chose. Rather, this appears to be a case in which transfer would simply shift the burden of inconvenience from AFR to GRI.

## Conclusion

For the reasons stated above, the Court denies defendant AFR's motion to dismiss or for transfer [docket # 6-1, 6-2, 27-1, 27-2]. AFR is directed to answer the complaint on or before August 13, 2004.

                                                              _____
                                                              MATTHEW F. KENNELLY
                                                              United States District Judge

Date: August 2, 2004